IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ZBIGNIEW ZUKOWSKI, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>FOSS MARITIME COMPANY, and )<br>FOSS ATLANTIC, INC. )<br>)<br>    Defendants. ) | Civil Action No. 11-0493-CG-M |

# ORDER

This matter is before the court on the motion for partial summary judgment (Doc. 99) filed by the defendants, Foss Maritime Company and Foss Atlantic, Inc. (collectively, "Foss" or "the defendants"), as well as multiple motions to strike (Docs. 102, 110, 127, 130) filed by Foss and the plaintiff, Zbigniew Zukowski ("Zukowski"). The court has reviewed the parties' briefs in support and opposition and the motions are now ripe for resolution. For the reasons stated below, Zukowski's motion to strike Foss' summary judgment motion and for sanctions (Doc. 102) is **DENIED** as **MOOT**; the defendants' motion to strike (Doc. 127) is **DENIED**; Zukowski's first motion to strike (Doc. 110) is **DENIED**; Zukowski's second motion to strike (Doc. 130) is **DENIED**; and the defendants' motion for partial summary judgment (Doc. 99) is **GRANTED**.

## I. FACTUAL BACKGROUND

The underlying factual history of the case is largely undisputed[1]: Zukowski was a sailor employed by the defendants' Mobile, Alabama-based predecessor, Gulf Caribe.  Doc. 100 at 9.  On September 10, 2008, Zukowski injured his back while pulling a cable aboard Gulf Caribe's vessel, the M/V Caribe Pioneer.  Doc. 116 at 2; Doc. 99-7 at 1.  He submitted an injury report the following day, and on September 24, 2008, he sought medical treatment at the Care Plus Walk-In Clinic ("Care Plus Clinic") in Brandon, Florida.  Doc. 116 at 2-3.  A physician at the Care Plus Clinic, Dr. Jandeep Sandhu, assessed low back pain and prescribed various medications as well as a course of physical therapy.  Id.

Several weeks later, on November 11, 2008, Dr. Sandhu released Zukowski to return to work without restrictions and declared him at maximum medical improvement ("MMI").  Id. at 4 (citing Doc. 99-8).  Dr. Sandhu's notes from this visit reflect that Zukowski had finished the course of physical therapy, that his back "feels fine now," and that he had "no pain."  Doc. 99-8 at 3.  The parties agree that Zukowski received maintenance and cure for this initial period.  Doc. 116-1 at 1; Doc. 100 at 2.

In December 2008, Zukowski returned to work aboard the M/V Caribe Pioneer for approximately one month, until January 2009.  Doc. 99-4 at 2.

---

[1] In his "Statement of Contested Material Issues of Fact" (Doc. 116-1), Zukowski characterizes certain facts as disputed when even a cursory review of the defendants' brief shows them to be undisputed.  See id. at ¶1-7; 12, and 13.

[2] The court notes that the report from Dr. Nucci that Zukowski seeks to strike is the same document that Zukowski himself introduced as an exhibit in his

Zukowski rejoined the M/V Caribe Pioneer a second time on February 14, 2009, and worked aboard the vessel until March 10, 2009. Id. at 5. When Zukowski disembarked on March 10, 2009, he did not submit an accident report, nor did he report a new injury to his back. Id. at 6.

On March 18, 2009, Zukowski returned to the Care Plus Clinic complaining of lower back pain. Doc. 116-2 at 5. This time, however, the defendants refused to authorize payment for further treatment, citing the fact that Zukowski had been placed on MMI on November 11, 2008. Id. at 3. A week later, on March 26, Zukowski sent a fax to John Bates, Gulf Caribe's operations manager in Mobile, stating that after he left the M/V Caribe Pioneer he developed strong pain in his lower back during the weekend of March 14-15 at the same location as his prior injury from 2008. Doc. 99-9. No maintenance and cure was forthcoming.

In late June 2009, Dr. Sandhu ordered an MRI of the lumbar spine and then referred Zukowski to Dr. Robert Nucci, an orthopedic surgeon. Doc. 116 at 4. Dr. Nucci concluded that Zukowski "was suffering from a lumbar strain with spams and underlying disc herniations at L3-4 and L4-5 which were, more probable [sic] than not, caused and/or made symptomatic by the September 10, 2008 accident at issue." Doc. 116-2 at 7. Dr. Nucci also stated that Zukowski was not at MMI and characterized Zukowski's more recent complaint of back pain as "a reoccurrence or exacerbation of the low back pain caused by the September 10, 2008 accident." Id.

3

In December 2010, approximately seventeen months after he first evaluated the plaintiff, Nucci referred Zukowski to Dr. Dario Grisales, an anesthesiologist and pain management specialist who concluded that "more probably than not" Zukowski's back pain was related to the September 10, 2008, accident aboard the M/V Caribe Pioneer.  Doc. 116-2 at 38; Doc. 116-3 at 3.  Dr. Grisales also concurred with Dr. Nucci that Zukowski was not at MMI.  Id.

Zukowski filed the instant lawsuit eight months later, on August 25, 2011.  Doc. 1.  On September 7, 2011, defense counsel wrote to plaintiff's counsel regarding the release of Zukowski's medical records for inspection.  Doc. 125-2 at 1.  The parties subsequently exchanged correspondence regarding Zukowski's claim, with the defendants requesting various documents such as additional medical records, Social Security reports, and sea service records.  See id. at 3, 6 (January 20, 2012, and February 7, 2012 letters from defense counsel to plaintiff's counsel).

On February 1, 2012, Zukowski made a formal, written demand for maintenance and cure arising out of his March 2009 complaints of back pain.  Doc. 116-2 at 151.  The defendants responded on February 22, acknowledging the demand for maintenance and cure and requesting Zukowski's pre-employment medical records.  Doc. 125-3.  On June 5, 2012, defense counsel wrote to plaintiff's counsel advising that "[w]e have been in the process of obtaining additional medical records, and my paralegal is

4

forwarding you copies as we receive them.  It has been necessary to obtain subpoenas, which is time consuming."  Doc. 125-3 at 3.  Defense counsel also advised that the defendants wished to arrange for a deposition and an independent medical examination of Zukowski, and asked plaintiff's counsel to suggest convenient dates for the latter.  Id.

On July 19, 2012, the defendants' independent medical expert, Dr. Russell Hudgens, evaluated Zukowski.  Doc. 116 at 18.  In contrast to the medical opinions of Drs. Nucci and Grisales, Hudgens testified that there is no way to determine, within a reasonable degree of medical certainty, whether Zukowski's complaints of back pain were a result of the September 2008 accident or whether they were the result of a new injury which took place sometime in 2009, after he was declared to be at MMI.  Doc. 99-6 at 8-9.  Hudgens also testified that Zukowski was a good candidate for "conservative non-surgical pain management" such as oral medications and the occasional epidural spinal block, both of which he described as "palliative" rather than "curative" treatments.  Id. at 13-14.

After Dr. Hudgens' evaluation, defense counsel wrote to plaintiff's counsel on August 3, 2012, stating that, "[w]e … have a good faith contention that [Zukowski's] current regimen is for a chronic condition, and that the treatment involving medication is palliative instead of curative."  Doc. 125-3 at 6.  According to Zukowski's brief, approximately one month later, Dr. Grisales recommended "working up Zukowski for [a] spinal cord stimulator."

5

Doc. 116 at 18.  In February 2013, both Drs. Nucci and Grisales signed sworn declarations stating, inter alia, that Zukowski was a good candidate for surgical implantation of a spinal cord stimulator, which would improve his physical condition, i.e., which would be curative rather than palliative.  Doc. 116-2 at 7,8; Doc. 116-3 at 3.

## II. MOTIONS TO STRIKE

Before beginning its analysis of the defendants' motion for partial summary judgment, the court turns to the various motions to strike filed by the parties.

Motions to strike are generally disfavored as time wasters that distract the court from the merits of a party's claim.  See, e.g., Haynes v. Twin Cedars Youth & Fam. Servs., Inc., 2012 WL 895699, at *5 (M.D. Ga. Mar. 15, 2012).  See also, Vaughn v. City of Orlando, 2008 WL 3540434 *2 (M.D. Fla. 2008).  As a result, motions to strike are infrequently granted.  Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F.Supp.2d 1345, 1348 (M.D. Fla. 2002).  See also, Austin S. I., Ltd. v. Barton-Malow Co., 799 F.Supp. 1135, 1145 (M.D. Fla. 1992).  Collectively, the parties have devoted approximately 57 pages to debating whether various summary judgment exhibits should be stricken - - and unnecessarily so. To the extent that the parties thought their opponent's exhibits warranted a challenge, a footnote or two in an opposition or reply brief would have sufficed.  See Northern Assur. Co. of America v. C&G Boat Works, Inc., 2012 WL 1712594 at *5 (S.D. Ala. 2012).

6

Additionally, the court notes for the parties' future reference, in the aftermath of the substantive 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, it appears that motions to strike summary judgment exhibits are no longer necessary.  As revised, Rule 56 provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).  The Advisory Committee's note specifies further that such an objection "functions much as an objection at trial, adjusted for the pretrial setting" and that "[t]here is no need to make a separate motion to strike." Id., Advisory Committee's Note.

**(1)    FOSS MARITIME'S MOTION TO STRIKE PHYSICIAN'S DECLARATIONS FILED BY ZUKOWSKI (DOC. 127)**

The defendants argue that the declarations of Drs. Grisales (Doc. 126-3) and Nucci (Doc. 116-2) should be stricken because they "fail to comply with the required standard that physicians' opinion testimony should be based upon a reasonable degree of medical certainty."  Doc. 127-1 at 1.

The problem with the defendants' argument is that the case they cite for support actually undermines their argument.  See Portis v. Wal-Mart, 2008 WL 3929672 (S.D. Ala. Aug. 22, 2008).  In Portis, the court denied a defendant's objection to certain physician testimony because the objection was "predicated on the notion that a treating physician cannot testify about anything relating to the patient, the patient's symptoms, or the physician's recommendations without uttering the incantation 'reasonable degree of

7

medical certainty.'" Portis at *2. The court further held that it was not necessary to require "the formalistic inclusion of a 'reasonable degree of medical certainty' qualifier to each and every question posed to, and answer given by, a treating physician in a trial deposition." Id. The court sees no reason, and Foss has provided none, why the same logic should not apply to a witness declaration. The court also sees no reason, and Foss has provided none, why the declarations of Nucci and Grisales do not comport with the requirements of Federal Rule of Evidence 702.

Accordingly, Foss' motion to strike the Nucci and Grisales declarations (Doc. 127) is hereby **DENIED**.

**(2)    ZUKOWSKI'S FIRST MOTION TO STRIKE (DOC. 110)**

Zukowski objects to 8 exhibits submitted by the defendants in support of their motion for partial summary judgment as not being sworn or otherwise admissible under Fed.R.Civ.P. 56. Doc. 110-1 at 1. In general, documents must be properly authenticated to be considered at summary judgment, unless it is apparent that they can be reduced to admissible, authenticated form at trial. U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc., 296 F.Supp.2d 1322, 1334 (S.D. Ala. 2003) (citing Bozeman v. Orum, 199 F.Supp.2d 1216, 1222 (M.D. Ala. 2002)). Zukowski is correct that the proper practice on a Rule 56 motion is to authenticate documents through affidavit or deposition; indeed, that practice should be followed as a matter of course in all proceedings in this District Court.

8

However, even in the face of an objection to reliance upon non-authenticated records, there is authority to indicate that, at the summary judgment stage, the court may rely upon non-authenticated records where it finds that those records could be reduced to admissible evidence at trial.  See Pritchard v. Southern Co. Serv., 92 F.3d 1130, 1135 (11th Cir. 1996); McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996), aff'd, 520 U.S. 781 (1997); Coker v. Tampa Port Authority, 962 F.Supp. 1462, 1467 (M.D. Fla. 1997).  Since Drs. Sandhu, Hudgens, and Nucci are allowed to testify regarding the treatment of the plaintiff as discussed above, the medical records which Zukowski seeks to strike (Docs. 99-8, 99-13, and 99-15) appear capable of being authenticated at trial. [2]  The same reasoning applies to the September 2008 accident report (Doc. 99-7), which Zukowski argues is inadmissible because it was signed by Captain Hopwood and not Zukowski; yet Captain Hopwood is allowed to testify at trial as to the events described in the report.  The same can also be said for the July 2007 accident report (Doc. 99-12) and the insurance notice (Doc. 99-11), both of which are capable of being authenticated at trial.

Zukowski also argues that the court should strike excerpts of the Gulf Caribe handbook (Doc. 99-10), yet this document was identified by Zukowski

---

[2] The court notes that the report from Dr. Nucci that Zukowski seeks to strike is the same document that Zukowski himself introduced as an exhibit in his opposition brief.  Compare Doc. 99-15 with Doc. 116-2 at 33.  And another challenged exhibit, Hudgens' report of his July 19, 2009, medical examination of Zukowski, was identified at Hudgens' deposition.  See Doc. 105-1 at 15-17.

9

himself at his deposition.  See Doc. 99-3 at 4, 5. The remaining documents that Zukowski seeks to have stricken are not necessary to determine whether summary judgment is appropriate in this case.

Accordingly, Zukowski's first motion to strike (Doc. 110) is **DENIED.**

### (3)   ZUKOWSKI'S SECOND MOTION TO STRIKE (DOC. 130)

Zukowski argues that the court should strike the sworn declaration of defense counsel (Doc. 125-1) because "the filing of new affidavits and/or sworn declarations via Reply Memorandum [is] disfavored and generally not allowed in Summary Judgment settings."  Doc. 130-1 at 1.

By Zukowski's own admission, defense counsel's sworn declaration was made "in an attempt to rebut the material issues of fact raised by Zukowski which indicate that Foss took few, if any, steps to investigate [Zukowski's] claim until well after it was put on notice of same." Id. at 2.  Such an attempt to rebut issues that Zukowski raised was perfectly legitimate on Foss' part. The court will accept and consider new arguments and evidentiary materials submitted in support of a movant's reply argument where, as here, those arguments and evidentiary materials are related and responsive to the non-movant's opposition brief and did not support new grounds for relief.  See Hammons v. Computer Programs & Sys., Inc. (CPSI), 2006 WL 3627117, *14 (S.D. Ala. Dec. 12, 2006) ("[N]othing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments

10

raised by the non-movant's opposition brief."; see also Baugh v. City of Milwaukee, 823 F.Supp. 1452, 1456 (E.D. Wis. 1993) ("It seems absurd to say that reply briefs are allowed but that a party is proscribed from backing up its arguments in reply with the necessary evidentiary material."), aff'd, 41 F.3d 1510 (7th Cir. 1994).

Accordingly, Zukowski's second motion to strike is **DENIED**.

### III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 99)

#### A.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies her initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may

not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

    B.    STATEMENT OF THE LAW

"Under general maritime law, seamen are entitled to bring an action for 'maintenance and cure,' a remedy available to compensate seamen who fall ill or become injured during their term of employment." Cabrera Espinal v. Royal Caribbean Cruises, Ltd., 253 F.3d 629, 630-31 (11th Cir. 2001) (citation omitted); see generally Garay v. Carnival Cruise Line, Inc., 904 F.2d 1527, 1533 & n. 7 (11th Cir. 1990) (pointing out that seamans' right to maintenance and cure dates back to ancient codes of the sea promulgated as far back as 1200 A.D.). "Maintenance" is "a living allowance" paid on a per diem basis, while "cure" is intended to "cover[ ] nursing and medical

13

expenses."  Cabrera Espinal, 253 F.3d at 631 (citation omitted); see also Kasprik v. United States, 87 F.3d 462, 464 (11th Cir. 1996) ("It is a well recognized rule in admiralty that when a seaman is injured or becomes ill while employed aboard a vessel, he is entitled to daily subsistence and medical treatment until his maximum cure has been reached.").  The obligation to pay maintenance and cure continues until such time as the seaman has reached the point of maximum cure.  See Nichols v. Barwick, 792 F.2d 1520, 1523 (11th Cir. 1986); Gooden v. Sinclair Refining Co., 378 F.2d 576, 579 (3rd Cir. 1967) ("The obligation to provide maintenance and cure continues until maximum medical recovery has in fact been achieved.").

The maintenance and cure remedy has been construed expansively in light of its remedial purposes of protecting the safety and health of "poor and friendless" seamen, and inducing seamen to accept sea duty despite its many intrinsic perils.  Baucom v. Sisco Stevedoring, LLC, 506 F.Supp.2d 1064, 1072-73 (S.D. Ala. 2007) (citing Flores, 47 F.3d at 1123 (noting the "traditional breadth of the remedy" and that any ambiguities and doubts are resolved in favor of the seaman); and Cabrera Espinal, 253 F.3d at 631 (observing that "a ship owner's liability for maintenance and cure is among the most pervasive and should not be defeated by narrow or restrictive distinctions")).  "The duty to provide maintenance attaches once the seaman enters the service of the ship."  Terrebonne v. K-Sea Transp. Corp., 477 F.3d 271, 279 (5th Cir. 2007) (citation omitted).

"[I]n an action for maintenance and cure, both reasonable attorney's fees and punitive damages may be legally awarded in a proper case—that is, upon a showing of a ship owner's willful and arbitrary refusal to pay maintenance and cure." Atlantic Sounding Co. v. Townsend, 496 F.3d 1282, 1284 (11th Cir. 2007) (internal quotes omitted), aff'd, 129 S.Ct. 2561 (2009). The Eleventh Circuit has held that, while there is no "bright line" with which to measure arbitrary conduct, examples of willfulness meriting punitive damages and counsel fees include: (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; [and] (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically. Hines v. J.A. LaPorte, Inc., 820 F.2d 1187, 1190 (11th Cir. 1987) (quotation omitted).

### C. LEGAL ANALYSIS

Zukowski does not allege that Foss terminated his benefits in response to his retention of counsel or refusal of any settlement offer. Instead, Zukowski argues that Foss failed to timely and thoroughly investigate his claim and failed to reinstate his benefits after he received additional diagnoses and treatment for his back pain. Doc. 116 at 16-17. Unfortunately for Zukowski, the evidence in the record does not support either allegation.

#### (1) Failure to Reinstate Benefits After Diagnosis of Previously Undetermined Ailment

First, the court notes that Zukowski's ailment, lumbar disc herniation and degenerative disc disease, was previously determined by Dr. Sandhu in

15

2008, and therefore does not fit the meaning of "an ailment previously not determined medically." Hines, 820 F.2d at 1190. Nevertheless, the court sets this basic issue aside and assumes for arguments' sake that Zukowski's March 2009 fax to John Bates constituted a formal demand for maintenance and cure. Foss could reasonably have believed that maintenance and cure were not required based upon the facts available at the time. For example, Foss knew that Dr. Sandhu had declared Zukowski to be at MMI on November 11, 2008. Doc. 116-2 at 2. Foss also knew that Zukowski had been on two voyages since being declared at MMI and left the M/V Caribe Pioneer on March 10, 2009, with no report of accident or injury. Doc. 99-4 at 5-6. Zukowski himself stated in his fax to Bates that his symptoms flared up on March 14-15 after he left the boat. Doc. 99-9. A ship owner's obligation to provide maintenance and cure for a sailor's ailment is contingent on the ailment manifesting itself while the seaman is in the service of his vessel. See Costa Crociere, S.p.A. v. Rose, 939 F.Supp. 1538, 1548 (S.D. Fla. 1996) (citing Baker v. Ocean Systems, Inc., 454 F.2d 379, 383 (5th Cir.1972)). Thus, even if Zukowski's injury ultimately proved to be an exacerbation of his 2008 injury, there is no evidence that Foss had any additional contemporaneous information other than Dr. Sandhu's November 2008 report and Zukowski's March 2009 fax -- both of which suggested that Zukowski was at MMI and did not suffer an injury or exacerbation while in the service of his vessel. Therefore, as a matter of law, the defendants' initial denial of

16

maintenance and cure in March 2009 upon these facts cannot be held as arbitrary or willful.

Furthermore, despite his assertion that he made repeated demands for maintenance and cure since March 2009, Zukowski cited no evidence that he attempted notify Foss of his subsequent diagnoses by Drs. Nucci and Grisales before his August 25, 2011, lawsuit or his February 1, 2012, formal demand. See Doc. 116 at 18; see also Doc. 116-2 at 151. In addition to this failure to cite evidence, there is persuasive authority which suggests that when a ship owner terminates maintenance and cure in reliance on the seaman's doctor's opinion that MMI has been attainted, the owner has not acted arbitrarily and capriciously in refusing to pay further maintenance and cure when the seaman did not notify the owner of subsequent visits to other doctors. Gorum v. Ensco Offshore Co., 2002 WL 31528460 at *8 (E.D. La. 2002) (citing Harrell v. Dixon Bay Trans. Co., 718 F.2d 123, 129-30 (5th Cir. 1983)).

**(2) Lax Investigation**

Zukowski also asserts that Foss took no steps to investigate his maintenance and cure claim for three years. Doc. 116 at 19. Yet he cites no evidence to support this allegation. As stated, supra, even if Zukowski's March 2009 fax to John Bates is held to be a demand for maintenance and cure, Foss had no reason to investigate in light of (1) Dr. Sandhu's declaration that Zukowski had reached MMI, (2) the lack of reports of an accident or injury aboard the M/V Caribe Pioneer in 2009, and (3) Zukowski's

17

own characterization that his back pain recurred <u>after</u> he left the boat. Contrary to Zukowski's claim of a three-year delay, the record shows that after receiving Zukowski's formal maintenance and cure demand in February 2012, Foss sought Zukowski's medical and employment records, issued subpoenas, arranged to take depositions, and arranged for a independent medical examination of Zukowski by its own medical expert.  <u>See</u> Doc. 125-2; Doc. 125-3; Doc. 116 at 18.

### (3) Other Factors Weighing Against Punitive Damages

As stated, <u>supra</u>, both Drs. Nucci and Grisales were of the opinion that Zukowski's back pain was, more probably than not, a result of the 2008 accident.  Doc. 116-2 at 7; Doc. 116-3 at 3.  However, during the course of Foss' investigation, an independent medical expert, Dr. Hudgens, testified that there is no way to determine the question with a reasonable degree of medical certainty in the absence of an MRI scan that dates to late 2008.  <u>See</u> <u>supra</u> (<u>citing</u> Doc. 99-6 at 8-9).  Hudgens also stated his recommended course of treatment for Zukowski as of July 2012 was "pain management ... along with physical therapy."  Doc. 99-13 at 2.

The court notes that Nucci and Grisales did not render their opinions regarding the curative need for a spinal cord stimulator until after Hudgens' independent medical examination and after Foss cited the curative-versus-palliative issue in its August 2012 letter disputing Zukowski's formal demand for maintenance and cure.  <u>See</u> Doc. 99-4; Doc. 116-2 at 8 and 126 (Grisales

18

note dated September 4, 2012, regarding recommended spinal cord stimulator trial); see also Doc. 116-3 at 3. While Foss may ultimately be proved wrong on this issue, none of the facts in evidence cited above establishes the existence of a genuine dispute of material fact that Foss was arbitrary or willful in denying maintenance and cure or was lax in its investigation of his claims.

## IV. CONCLUSION

For the reasons enumerated above, Foss' motion for partial summary judgment is due to be **GRANTED**. Zukowski's claim for maintenance and cure remains before the court.

**DONE** and **ORDERED** this 10th day of May, 2013.

/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**